# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03131-RBJ

LINDSAY STRONG,

    Plaintiff,

v.

SRC of COLORADO, L.L.C d/b/a PEAKVIEW ASSISTED LIVING and MEMORY CENTER,

    Defendant.

---

## AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff Lindsay Strong by and through counsel Christopher M.A. Lujan of EMPOWER P.C., respectfully alleges for her Amended Complaint and Jury Demand as follows:

### I.  INTRODUCTION

1. The Defendant, SRC of Colorado, L.L.C. operates the Peakview Assisted Living and Memory Center (hereafter "Peakview") located in Centennial, Colorado. Starting in August 2015, the Plaintiff served as the Director of Resident Care until her wrongful termination on 23 August 2018. The Defendant terminated Plaintiff's employment because of her status as a pregnant employee. When the Plaintiff's pregnancy caused complications that impacted her health and ability to return to work,

the Defendant started to fabricate performance issues to lay the foundation for its' decision to terminate Ms. Strong.  As a result of Defendant's illegal treatment, Ms. Strong lost her job shortly after having twin babies which caused her to suffer lost wages and benefits, humiliation, loss of future employment opportunities, loss of enjoyment of life, and other significant injuries, damages, and losses.

## II.     JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et. seq.*, and Colorado Revised Statute (C.R.S.) §24-34-401 *et. seq*.

3. Plaintiff's claim for attorney's fees and costs is proper under the enforcement provisions of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 (k) and C.R.S. §24-4-405 (5).

4. The employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and 42 U.S.C. §2000e-5 (f) (3).

## III.    ADMINISTRATIVE PREREQUISITES

5. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and received a Notice of the Right to Sue letter from the EEOC on 22 July 2020.

6. Plaintiff has filed this cause of action less than ninety (90) days after the issuance of the right to sue letter.

## IV. PARTIES

7. Plaintiff Lindsay Strong is a citizen of the United States and a resident of the State of Colorado. At all times referred to herein, Ms. Strong was employed by SRC of Colorado, L.L.C.

8. Defendant, SRC of Colorado, L.L.C., d/b/a Peakview Assisted Living and Memory Center, is organized under the laws of the State of Colorado and registered to do business in the State of Colorado with the Peakview facility located in Arapahoe County, State of Colorado.

9. At all relevant times, Defendant was an employer within the meaning of 42 U.S.C. §2000e, and was engaged in an industry affecting commerce, and employed more than fifteen (15) employees for each working day during the preceding calendar year.

## V. FACTUAL ALLEGATIONS

10. Plaintiff began her employment with the Defendant on 08 August 2015 where she was hired as the Director of Assisted Living earning $46,000 a year. The Plaintiff earned health care benefits as part of her compensation package with this position.

11. In the two years that she served in this position, Plaintiff earned good remarks from her supervisors on her annual performance evaluations and was promoted

to Director of Resident Care. In addition to a new title, the promotion came with a raise where she would earn $64,290.00 a year.

12. The promotion occurred on 01 March 2018.

13. The Plaintiff's direct supervisor was Peakview Executive Director Jayna Sullivan.

14. As the Director of Resident Care, Plaintiff was responsible for implementing, coordinating and managing person-centered care, directing resident well-being according to state regulations; maintaining working knowledge of state regulations, policies, and procedures; operating within budget parameters; managing personnel; facilitating training for staff members; coordinating resident admission process; and managing the daily tasks conducted by caregiving team members.

15. The Plaintiff learned that she became pregnant on 28 October 2017.

16. The Plaintiff told Ms. Sullivan of her pregnancy on 28 October 2017.

17. Because of her limited amount of leave, the Plaintiff had desired to work up to the delivery date of her children so that she could save as much paid leave as possible.

18. In April 2018, the Plaintiff was diagnosed with physical complications due to her pregnancy and told by her doctor that she needed complete bed rest.

19. Ms. Sullivan told the Plaintiff that her job was protected by the Family Medical Leave Act and that she had nothing to worry about in terms of losing her job.

20. The Plaintiff applied for family medical leave which was approved by the Defendant. At first, the Plaintiff was on intermittent family medical leave as she was

expected, by Ms. Sullivan, to be available and work from home. For the first several weeks, Ms. Sullivan required the Plaintiff to be available for a 9:00 a.m. conference call.

21. During this time, Ms. Strong was in and out of the hospital and despite her physical condition, she often worked from home and the hospital, answered questions from Peakview staff when they would call, and managed the caregivers' schedule.

22. On 17 May 2018, the Plaintiff's health began to deteriorate even further to the point where she spent multiple days in hospital.

23. When the Plaintiff attempted to inform Ms. Sullivan of her health status and her need for hospitalization, Ms. Sullivan became extremely annoyed and told Plaintiff that she needed to go on maternity leave full time.

24. Ms. Sullivan was upset with the number of times Plaintiff had to visit the hospital and ordered Ms. Strong to go on maternity leave full time on 17 May 2018.

25. While she was on continuous family medical leave, Peakview members would call the Plaintiff to inquire on when she was coming back and to complain about the lack of leadership and responsiveness from Ms. Sullivan. Although the Plaintiff would encourage her staff members to report problems directly to Ms. Sullivan, they responded by noting that they did report issues to Ms. Sullivan, but she failed to respond to their concerns.

26. While on leave, the Plaintiff learned from others just how much Ms. Sullivan disliked Ms. Strong being away while on maternity leave. The Plaintiff learned through others that Ms. Sullivan would make disparaging comments about her absence on leave

and even went so far as to change many of the processes that Plaintiff implemented while she was on leave.

27. Ms. Sullivan's disparaging comments about the Plaintiff's maternity leave was observed by other members of Peakview's management team.

28. Finally, Ms. Sullivan hired an employee to replace the Plaintiff while she was on maternity leave. Ms. Sullivan hired this employee without any evidence that the Plaintiff would not return to Peakview after her maternity leave was over.

29. The Plaintiff delivered twins on 24 May 2018.

30. Ms. Sullivan did not hide her dislike for Plaintiff's decision to go on maternity leave. When Plaintiff returned to work on 15 August 2018, Ms. Sullivan refused to acknowledge Ms. Strong's return to work and refused to attend a baby shower that was thrown on her behalf. Especially noteworthy is the fact that the first time Ms. Sullivan acknowledges the Plaintiff's return to work was on 20 August—five days after Ms. Strong returns to work.

31. Upon Plaintiff's return to work, Ms. Sullivan did not acknowledge her return to work; did not check on Plaintiff to see how she was doing at work; and refused to welcome her back to work.

32. Ms. Sullivan's icy treatment of the Plaintiff was witnessed by Ms. Strong and other members of Peakview's management team.

33. Five days after her return from maternity leave on 22 August 2018, the Plaintiff was approached by a staff member and advised of an incident between a resident and another staff member. In this incident, Plaintiff was advised that another staff

6

member refused to give a resident a cup of coffee because the offending staff member believed that it causes "messes" that she would have to clean up.  When Plaintiff learned of this incident, she gave the offending staff member a verbal reprimand for refusing to give a resident a cup of coffee.

34. Next, Plaintiff learned of a staff member who, on two separate instances, doused residents in the face with water during bathing.  At one point, the Plaintiff learned that the offending staff member intentionally sprayed the resident in the face with water to the point where the resident screamed, "please don't get my face, I don't want to drown."  The Plaintiff learned that this incident occurred on 20 August 2018 – three days after she returned from maternity leave.

35. The Plaintiff notified the reporting staff member that this was elder abuse and that she needed to report this incident to Ms. Sullivan.  The Plaintiff reported this incident to Ms. Sullivan on 22 August 2018; the same day that she learned of the incident.

36. Upon first learning of these incidents, Ms. Sullivan minimized the incident claiming that the offending staff member "was going through a lot right now in her personal life."  When the Plaintiff told Ms. Sullivan that this was an act of elder abuse that needed to be investigated thoroughly, Ms. Sullivan responded by ordering the Plaintiff to suspend both the reporting staff member and the offending staff member for failing to notify management the elder abuse when it first occurred.

37. On 23 August 2018, Ms. Sullivan and her supervisor, Christi Murfitt, placed the Plaintiff on investigatory leave and told Plaintiff that she would be suspended until further notice.  The Defendant claims that the Plaintiff is a mandatory reporter and is

required to report incidents of possible elder abuse when she becomes aware of it. Specifically, the Defendant claims that the Plaintiff became aware of elder abuse in June 2018 when a former employee called Plaintiff to congratulate her on the birth of her children, discuss her family, and miscellaneous issues involving her former employee at Peakview.

38. During the Plaintiff's June discussion with this former employee, the individual advised Plaintiff that she quit Peakview because of personnel incidents which were reported to Peakview management. This individual told Plaintiff that "everybody already knew" of these personnel issues but did nothing to address them.

39. The Defendant cites Plaintiff's brief June conversation with this former employee as a reason to terminate Plaintiff. Plaintiff believed that Ms. Sullivan and Peakview management already knew about these personnel issues in June because the former employer specifically told her that the incidents were reported but that "nothing was done about it."

40. When Ms. Sullivan called Plaintiff to discuss this incident, Plaintiff responded that she was at a doctor's appointment and told her that she was unavailable to talk. The Defendant did not follow up with Plaintiff after this telephone call.

41. One day after being placed on investigatory leave, the Defendant completed its' "investigation" and notifies the Plaintiff that it will terminate her effective 24 August 2018.

42. The only reason SRC was even aware that elder abuse was taking place (spraying residents in the face with water from a shower) was because Plaintiff reported the abuse immediately when she became aware of the incident.

43. The Defendant cited the Plaintiff's "misconduct related to managing associates" as another justification for her termination. When the Complainant asked what "management style" meant, Ms. Sullivan refused to provide any details on why this was cited as cause for her termination.

44. At no time prior to her termination did Ms. Sullivan ever notify her of problems, complaints, or concerns that she had with Plaintiff's "management style."

45. At no time from the date of her promotion in March 2018 through her termination in August 2018 did Ms. Sullivan bring problems with her "management style" to her attention.

46. A review of Plaintiff's personnel file after her termination shows that Ms. Sullivan was dishonest about alleged conversations she had with Plaintiff about her interactions with staff and residents. While Ms. Sullivan's handwritten notes indicate that she spoke to Plaintiff in March 2018, these conversations never happened.

47. In fact, Ms. Sullivan praised the Plaintiff's management style and noted that the Plaintiff's department "is the only one that runs well."

48. Peakview's Regional Wellness Director praised the Plaintiff for her work performance and had new employees travel from out of state to train with Ms. Strong. From November 2017 through March 2018, Plaintiff trained three employees.

49. Upon learning of her termination, Ms. Strong attempted to make arrangements with Ms. Sullivan to pick up her personal items from her office. After Ms. Sullivan initially denied the Plaintiff from coming to pick up her personal items, she eventually agreed to the request.

50. Before allowing Plaintiff to pick up her items, Ms. Sullivan first called the police department to have them standing by when the Plaintiff first arrived. Ms. Sullivan called the police despite the fact that Ms. Strong did not pose a threat to anyone's personal safety or provided evidence that she would be violent in attempting to recover her personnel items from her office.

51. Finally, in adding insult to injury, Ms. Sullivan denied Plaintiff the opportunity to recover her personnel furniture items (purchased with her own money) from her office and said that if she (Ms. Strong) wanted these items, she "would need to request them in court."

52. It was not simply enough for SRC to terminate Plaintiff for cause based on little to no evidence, the Defendant, through the hostile acts of Ms. Sullivan, compounded the indignity of this termination by treating Lindsay Strong like a criminal in calling for the police to be present when she went to recover her personal items from her office. Ms. Sullivan's decision to make a spectacle of this termination by calling the police is further evidence that Jayna Sullivan deliberately intended to discriminate against Ms. Strong in the termination of her employment.

53. Ms. Sullivan also put Plaintiff on a Facetime video with Ms. Murfitt while she gathered her personal items further embarrassing Ms. Strong.

54. The Defendant engaged in disparate treatment in how it disciplined Plaintiff for alleged violations of company policy versus how it treated male supervisors for violating company policies.

55. The Defendant allowed for numerous male employees to maintain their employment even though their conduct violated workplace policy.

56. While at Peakview, Plaintiff was aware of at least three male supervisors who missed meetings, came to work late, failed to work a full work week, or who left work early.

57. These male supervisors were allowed to keep their employment for actual violations of company policies but summarily terminated the female Plaintiff based on alleged violations of company policy.

58. The Defendant treated the female Plaintiff less favorably than her male supervisory co-workers.

59. The Defendant terminated the Plaintiff three months after she gave birth to a twin boy and girl. Four days after returning from maternity leave, the Defendant terminated the Plaintiff and caused her to lose her salary and medical insurance benefits needed to care for her babies.

## VI.     STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Violation of Title VII of the Civil Rights Act of 1964 – Pregnancy Discrimination*)*

60.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

61.     At all relevant times, Plaintiff Lindsay Strong was a member of the protected class as a pregnant female.

62.     Plaintiff was subjected to disparate treatment, as described above, and ultimately terminated by Defendant because of her gender and pregnancy, in violation of Title VII of the Civil Rights Act of 1964.

63.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered a loss of income, wages, and other benefits of employment, and experienced mental and emotional pain and suffering.

64.     Defendant is therefore liable to Plaintiff for all economic and non-economic damages incurred by Plaintiff because of Defendant's discriminatory actions, as detailed above.

65.     Because of Defendant's illegal conduct, the Plaintiff suffered significant economic, consequential, and compensatory damages.

66.     Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

## SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. §24-34-402 – Pregnancy Discrimination)

67. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

68. At all relevant times, Plaintiff Lindsay Strong was a member of the protected class as a pregnant female.

69. Plaintiff was subjected to disparate treatment, as described above, and ultimately terminated by Defendant because of her pregnancy, in violation of C.R.S. §24-34-402 (a).

70. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered a loss of income, wages, and other benefits of employment, and experienced mental and emotional pain and suffering.

71. Defendant is therefore liable to Plaintiff for all economic and non-economic damages incurred by Plaintiff because of Defendant's discriminatory actions, as detailed above.

72. Because of Defendant's illegal conduct, the Plaintiff suffered significant economic, consequential, and compensatory damages.

73. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

## THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. §24-34-402.3 – Pregnancy Discrimination)

74. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

75. On 28 October 2017, the Defendant became aware that Plaintiff was pregnant.

76. Despite Plaintiff making it clear to Ms. Sullivan that she wanted to work up to the delivery of her children, Ms. Sullivan forced her to go on full time maternity leave on 17 May 2018.

77. Plaintiff's twin children were born on 24 May 2018.

78. Plaintiff never requested an accommodation, and never requested to go on fulltime maternity leave on 17 May 2018.

79. Pursuant to C.R.S. §24-34-402.3(1)(a)(IV), an employer may not force a pregnant employee to take an accommodation that was not requested or necessary.

80. The change in Plaintiff's work schedule and environment were neither requested nor necessary accommodations.

81. Defendant is therefore liable to Plaintiff for all economic and non-economic damages incurred by Plaintiff because of Defendant's discriminatory actions, as detailed above.

82. Because of Defendant's illegal conduct, the Plaintiff suffered significant economic, consequential, and compensatory damages.

83. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant, and award her all relief as allowed by law, included, but not limited to the following:

a.  Declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages as established at trial;

c.  Any economic losses or injuries that Plaintiff has suffered to the present time or which Plaintiff will probably suffer in the future, including but not limited to loss of earnings or damage to her ability to earn money in the future, and other expenses;

d.  Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

e.  Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f.  Pre-judgment and post-judgment interest at the highest lawful rate;

g.  Attorney's fees and costs; and

h.  Such relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 11th day of December 2020

*s/ Christopher M.A. Lujan*
Christopher M.A. Lujan, Esq.
Empower P.C
2851 South Parker Road, Suite 316
Aurora, Colorado 80014
720.791.5700 (Office)
720.260.1802 (Mobile)
303.317.8145 (Facsimile)
christopher@empowerlawdenver.com

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11st day of December 2020, a true and correct copy of the foregoing **AMENDED COMPLAINT AND JURY DEMAND** was served via CM/ECF to the following:

Mr. Michael H. Bell, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2000 S. Colorado Blvd.
Tower 3, Suite 900
303.764.6800 (Office)
303.831.9246 (Facsimile)
michael.bell@ogletree.com

*Attorney for Defendant*

*/s/ Christopher M.A. Lujan*
Christopher M.A. Lujan, Esq.
Empower P.C.